IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 05-3J |
| v. | ) | |
| | ) | |
| CHARLES M. CUMMINGS, JR., | ) | |
| | ) | JUDGE GIBSON |
| Defendant. | ) | |

# MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This case comes before the Court on the Defendant's Motion to Suppress (Document No. 15), and Brief in Support (Document No. 16), Motion for Early Disclosure of Jencks Materials (Document No. 17), and Brief in Support (Document No. 18), Motion to Inspect Jury Selection Materials (Document No. 19), and Brief in Support (Document No. 20), Motion to Permit Counsel to Submit Questions on Voir Dire of Prospective Jurors (Document No. 21), and Brief in Support (Document No. 22) and Motion to Permit Counsel to Conduct Voir Dire of Prospective Jurors (Document No. 23), and Brief in Support (Document No. 24). The Government filed an Omnibus Response to Defendant's Pretrial Motions (Document No. 28). The Court held a hearing and received evidence on the Defendant's Motion to Suppress on October 3, 2005. The parties submitted the following post-hearing briefs: Brief in Opposition (Document No. 32) filed by the Government and a Post-Suppression Hearing Brief filed by the Defendant (Document No. 33).

For the reasons stated herein, the Defendant's Motion to Suppress is denied. The Defendant's Motions for Early Disclosure of Jencks Materials and to Permit Counsel to Conduct Voir Dire of

Prospective Jurors are also denied. The Defendant's Motion to Inspect Jury Selection Materials is granted. The Court reserves ruling upon the Defendant's Motion to Permit Counsel to Submit Questions on Voir Dire of Prospective Jurors until the Defendant's counsel has submitted specific questions it wishes to ask the prospective jurors.

## I.   MOTION TO SUPPRESS

On October 3, 2005, the Court held a hearing at which time testimony was received in regard to the Defendant's Motion to Suppress. The Court's findings of fact are based upon the testimony and exhibits admitted in that Federal Rule of Criminal Procedure 12 (b) (3) (C) hearing.

In brief, the Defendant moves for the suppression of any statements made by the Defendant after his "unlawful detention and/or search or searches" made by the Pennsylvania State Police as well as the suppression of physical evidence obtained from the vehicle which the Defendant occupied because of a lack of consent or probable cause. Defendant's Motion, pp. 2-3. Suffice it to say that the Government disputes these assertions and argues that the statements and the seizure of evidence on the evening of October 30, 2004 were proper. *See* Government's Brief.

The Defendant narrows his argument within his Post-Suppression Hearing Brief by arguing that at the time of the vehicle stop, the action of Trooper Richards violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) because the Defendant was essentially in custody and being interrogated without *Miranda* warnings being read to him prior to being questioned about the "crack" pipe and whether or not anything else was in the vehicle.[1] Defendant's Post-Suppression Hearing Brief,

---

[1] The Defendant had indicated at the suppression hearing that this was essentially the limit of his challenge. Therefore, the Court understands the Defendant's arguments regarding any Sixth Amendment issue found in his motion and brief in support to have been waived. Additionally, the Court notes that any Sixth Amendment argument regarding the right to

p. 7. The Government responds that the Defendant was not in custody by being a passenger in a vehicle subject to a "routine traffic stop" but was in custody only after he displayed to Trooper Richards a bag containing cocaine. Government's Post-Hearing Brief, p. 5. Alternatively, the Government argues the independent source rule, that the *Miranda* warnings cured any defect, and the good faith exception to support the arrest of the Defendant, questioning and seizure of contraband from the vehicle in which the Defendant was a passenger.

The Government called the only witnesses at the suppression hearing: Pennsylvania State Troopers Goins and Richards. Based upon the evidence submitted at that hearing, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT

1) On October 30, 2004 at approximately 11:50 p.m. Trooper Goins and Trooper Richards were on duty, in uniform, and inside a marked state police cruiser which was being driven by Trooper Goins northbound on State Route (hereinafter "SR") 219 in order to respond to an incident in Ogle Township, Somerset County. Hearing Transcript (hereinafter "HT"), pp. 6, 33.

2) The weather conditions did not include any precipitation, but it was "windy." HT, pp. 7, 33.

3) After leaving the "last Somerset exit" on SR 219, the Troopers had followed a red 2001 Dodge Ram 1500 4x4 for a "couple of miles" and had noticed its tires touching both the

---

representation by an attorney did not attach at the time of the incident described in this opinion as the Defendant was not charged with a criminal offense at the time of the traffic stop. *See Texas v. Cobb*, 532 U.S. 162, 167-168, 121 S.Ct. 1335, 1340, 149 L.Ed.2d 321 (2001).

dotted white center line and the white fog line as it weaved within its lane, but the Troopers did not find this to be a reason to stop this vehicle because they attributed such movement to the wind conditions of that evening. HT, p. 7.

4) Trooper Goins then drove into the passing lane in order to attempt to pass the Dodge Ram on its driver's side and as the state police cruiser was situated about halfway alongside the Dodge Ram, the Dodge Ram made an abrupt move to the left crossing the dotted white center line with its driver's side tires resulting in "20-25 percent of the vehicle" being in the state police cruiser's lane of traffic and causing Trooper Richards to lean to the left of his passenger seat in expectation of an impact. HT, pp. 8, 33.

5) As the driver, Trooper Goins "dropped back behind" the Dodge Ram by several car lengths and observed it cross the dotted white center line three more times with its driver's side tires and once cross the white fog line with "20-25 percent of the vehicle" crossing that line over the course of one mile. HT, pp. 8-9, 34.

6) Witnessing the traffic violations being committed by the driver of the Dodge Ram and suspecting that the driver was also in violation of Pennsylvania's law prohibiting driving under the influence of alcohol or a controlled substance, the troopers initiated a traffic stop of the Dodge Ram by activating the state police cruiser's emergency lights. HT, pp. 9-11, 19, 34.

7) The Dodge Ram drove forward for another 2/10ths of a mile after the emergency lights of the police cruiser were activated but finally came to a stop; there were no highway lights, just the emergency lights and the headlights of the state police cruiser that provided

any illumination at the scene of the stop. HT, pp. 11, 25-26.

8) Thereafter, Trooper Goins approached the driver's side of the Dodge Ram as the "contact officer" encountering Megan Cummings in the driver's seat while Trooper Richards, as "the security officer" approached the passenger side of the Dodge Ram encountering the Defendant seated in the passenger's seat; both Troopers were shining flashlights within the cab of the vehicle. HT, pp. 11-12, 13, 19, 26, 34.

9) At the time Trooper Richards approached the passenger side of the Dodge Ram, the Defendant was not "free to leave" "because he's a passenger and ...[the driver was being questioned]." HT, pp. 26-27, 50.

10) Trooper Goins found Ms. Cummings to be physically impaired based upon her appearance and speech and he requested her driver's license, registration and proof of insurance; Ms. Cummings made a remark to the Defendant and the Defendant retrieved "an envelope" from the glove compartment quickly opening and closing the compartment door and handed the envelope to Ms. Cummings. HT, pp. 12, 35, 55.

11) The envelope did not contain the paperwork requested by Trooper Goins so Ms. Cummings handed it back to the Defendant who then re-opened the glove compartment removing a plastic baggie containing an item and placing it between his legs and placed documents on his lap hunching over them as he searched through the documents and finally handed Ms. Cummings another document. HT, pp. 12-13, 36, 55-56.

12) The Defendant then placed the remaining paperwork back into the glove compartment, but left the plastic baggie between his legs while "leaning forward somewhat" requiring

Trooper Richards to stand on his "tiptoes to look down at it." HT, p. 36.

13) Trooper Richards, as the "security officer" was responsible for "maintaining surveillance ...on the driver...[and] in this case the passenger" to prevent any harm to his partner or himself. HT, pp. 13, 34.

14) Trooper Richards, noticing the plastic baggie but not aware of what it contained, inquired of the Defendant what it was and the Defendant held up the plastic baggie which contained a "Coke" can with tape on it and holes punctured in it (hereinafter "Exhibit 1") and handed it to Trooper Richards; Trooper Richards then asked what it was and the Defendant responded "I smoke crack with it" and handed to Trooper Richards. HT, pp. 14, 36-37, 38, 47-48, 49, 50.

15) Trooper Richards then inquired if "there was anything else in the vehicle that [the troopers] needed to know about", and in response the Defendant reached for and produced a plastic sandwich baggie that appeared to contain cocaine and gave it to Trooper Richards. HT, pp. 14-15, 39-40, 51, 54.

16) Trooper Richards then "played dumb and asked him what it was, and [the Defendant] stated it was 'cocaine'" and that it was his cocaine and not Ms. Cummings's. HT, pp. 40, 45, 51.

17) Trooper Richards then asked the Defendant to exit the vehicle, secured him in handcuffs and told him he was being placed under arrest; and both of them then walked to the rear of the vehicle whereupon Trooper Goins directed Ms. Cummings to keep her hands on the steering wheel and then he proceeded to the rear of the vehicle to assist Trooper

Richards. HT, pp. 15, 40-41, 45.

18) The Defendant at this time was handcuffed with his back facing the vehicle; Trooper Richards informed Trooper Goins what was in the Defendant's possession, the Defendant was "Mirandized" by Trooper Goins to which the Defendant responded that he understood the warnings while Trooper Richards performed a pat-down of the Defendant. HT, pp. 16, 40-41.

19) The Defendant chose to speak to the troopers and in response to their questioning, the Defendant indicated that there was cocaine in a piece of luggage in the truck bed and in the passenger side door and that a quantity of marijuana was inside a tin within the cooler in the truck. HT, pp. 17, 41.

20) The troopers consulted with their supervisor and thereafter the troopers had the Dodge Ram towed and then applied for and obtained a search warrant for this vehicle. HT, pp. 17, 41-44.

21) Ms. Cummings was placed under arrest for suspicion of driving under the influence and after being "Mirandized" she was questioned regarding what was in the vehicle to which she responded in a manner similar to the following: "You got to understand, he's my father." HT, pp. 17-18.

22) A search of the Dodge Ram pursuant to the search warrant which had been issued revealed "approximately 100 grams of cocaine, $26,000 in cash and marijuana and paraphernalia". HT, p. 44.

CONCLUSIONS OF LAW

1) "The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979).

2) "[A] traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle." *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332 (1984).

3) "[T]he usual traffic stop is...[more] analogous to a so-called 'Terry stop,' than to a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).

4) During a Terry stop "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" regarding the detainee, "[b]ut the detainee is not obliged to respond." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).[2]

5) The character of a Terry stop is "nonthreatening" and as such "persons detained pursuant

---

[2] The Fourth Amendment is not violated when state law requires a suspect to reveal his/her name to a police officer during a *Terry* stop. When such identification is "reasonably related" to the reason for the stop, the suspect may be arrested for failure to provide it. *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 187-188, 124 S.Ct. 2451, 2459, 159 l.Ed.2d 292, 304 (2004).

to such stops are not 'in custody' for purpose of Miranda." *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334-335 (1984).

6) A police officer's "unarticulated plan" does not bear upon the issue of whether an individual has been taken into custody; to determine if an individual has been taken into custody, a court must view the applicable facts based upon what a "reasonable man in the suspect's position would have understood his situation" to be. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984)(footnote omitted).

7) Troopers Goins and Richards possessed reasonable suspicion to conduct a traffic stop of the Dodge Ram based upon their observation of the operation of that vehicle which revealed summary traffic violations of the Pennsylvania Vehicle Code as well as evidence of a possible violation of Pennsylvania's law prohibiting driving while under the influence of alcohol or a controlled substance. *See* 75 Pa.C.S.A. § 6308(b)(reasonable suspicion required to stop a vehicle); *U.S. v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604, 610(1985)(*citing United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616-617 (1975))(same).

8) Trooper Richards, acting as the security officer on the traffic stop in the case *sub judice*, was concerned about the possible presence of weapons within the Dodge Ram, particularly in the possession of its occupants and to further this goal of officer safety, Trooper Richards was permitted to ask questions of the Defendant during the course of this vehicle stop to ensure that no crime had been or was being committed as well as to satisfy himself that the Defendant was not armed with a weapon. *Berkemer v. McCarty*,

468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968).

9) At the time Trooper Richards inquired as to the contents of the plastic baggie, the Defendant was not under arrest; once satisfied that the plastic baggie did not contain a weapon, but only evidence of the crime of possession of drug paraphernalia, Trooper Richards, for the purpose of increasing his and his partner's safety, asked the Defendant whether there were other objects in the vehicle he should be concerned about before he proceeded to arrest the Defendant for possession of the drug paraphernalia.

10) The Defendant voluntarily responded to Trooper Richards' question not by words, but through the action of revealing a separate plastic baggie containing a white powdery substance, suspected to be cocaine.

11) Trooper Richards inquired as to what the substance was and the Defendant voluntarily stated that it was his cocaine.

12) Satisfied that the Defendant did not possess any weapons but only contraband, Trooper Richards requested the Defendant to step out of the vehicle and at that time placed him under arrest for possession of the drug paraphernalia and cocaine.

13) The arrest of the Defendant, who was a passenger of a lawfully stopped vehicle, was permissible because Trooper Richards possessed probable cause to arrest the Defendant based upon the admissions of the Defendant made during the lawful traffic stop.

14) After being properly "Mirandized," the Defendant waived his Fifth Amendment right to self-incrimination and stated to the troopers that the vehicle also contained a quantity of

marijuana and two separate quantities of cocaine.

15) The Defendant was not in custody at the time he commented that he had smoked "crack" using Exhibit 1, as Trooper Richards' question regarding Exhibit 1 was in relation to those items exposed in plain view by the Defendant while searching for the documentation requested by Trooper Goins, documentation that related to the initiation of the traffic stop. *See Berkemer v. McCarty*, 468 U.S. 420, 439-440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).

16) The treatment of the Defendant prior to being requested to exit the vehicle by Trooper Richards was not such that "render[ed] him 'in custody'"(*Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 335 (1984)) thus requiring Trooper Richards to "Mirandize" the Defendant: Trooper Richards did not converse with the Defendant or request any action of him prior to his displaying Exhibit 1 within the trooper's plain view; the trooper is not alleged to have demonstrated any show of force to the Defendant; the Defendant did not request to leave the vehicle and Trooper Richards did not order the Defendant, as a passenger, to exit the vehicle (which is permissible based solely upon the fact he was a passenger pursuant to *Maryland v. Wilson*, 519 U.S. 408, 414-415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 48 (1997)) prior to the Defendant displaying Exhibit 1 within the trooper's plain view.

17) Additionally, Trooper Richards' actions of standing outside the passenger side door cannot be viewed as a restriction of the Defendant's movement, as such action is permissible and was done in furtherance of both troopers' interest in their safety. *United*

*States v. Sowers*, 136 F.2d 24, 28 (1st Cir. 1998)(finding that an order to remain within the stopped vehicle "was not onerous.")(citations omitted).

18) Therefore, the statements of the Defendant prior to his arrest and being removed to the rear of the stopped vehicle are admissible at the trial of the Defendant and as a result, any evidence obtained as a result of the Defendant's pre-arrest statements are not found to be "fruit of the poisonous tree" and such evidence is also deemed to be admissible. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## II. MOTION FOR EARLY DISCLOSURE OF JENCKS MATERIAL

The Defendant moves for the early disclosure of Jencks material, specifically disclosure of such material three days prior to trial in this matter, citing the opinion of Judge Lee in the case of *United States v. MacFarlane*, 759 F.Supp. 1163, 1167 (W.D.Pa. 1991), wherein Judge Lee found that production of Jencks material three days prior to trial was warranted. The reason cited for the Defendant's request for early production is trial expediency and effective examination of witnesses. Defendant's Brief, p. 2. The Government notes that it has no obligation to provide this material until after the direct examination of its various witnesses, *see* FED. R. CRIM. P. 16; 18 U.S.C. § 3500, but recognizes that under its normal practice such information will be made available "one to three days prior to the respective witness's testimony." Government's Brief, p. 21.

The Court notes that its standard criminal pretrial order encourages early production of Jencks material by the Government at least three days prior to the commencement of trial, but the law previously prevented this Court from ordering production of Jencks material relating to any witness prior to the testimony of that witness on direct examination. *United States v. Murphy*, 569 F.2d 771, 773-774 (3rd

Cir. 1978).

However, the Court recognizes that the holding in *Murphy* has been superseded since the addition of FED. R. CRIM. P. 12(i) in 1983 and the subsequent removal of that provision in 1993 to FED. R. CRIM. P. 26.2(g) where it provides for the production of Jencks material in a pretrial suppression hearing as well as in other pretrial events. *See United States v. Rosa, et al.*, 891 F.2d 1074, 1077 (3d Cir. 1989). The original text of FED. R. CRIM. P. 12(i) read: "(i) Production of Statements at Suppression Hearing. Except as herein provided, rule 26.2 [Jencks Act] shall apply at a hearing on a motion to suppress evidence under subdivision (b)(3) of this rule." *Id.* The *Rosa* Court was focused on the issue of Jencks material being used in a post-trial sentencing hearing, not with regard to production for general discovery purposes prior to trial or for a pretrial suppression hearing. Still, the point noted by the *Rosa* Court must be considered, but this Court does not believe it requires production of Jencks material based on what is essentially a general discovery request based upon considerations of trial efficiency.

Furthermore, the Court notes that a pretrial suppression hearing has already occurred before this Court and did not reveal any request or need for Jencks material,[3] so no Jencks material needs to be produced at this stage of the proceedings under the Federal Rules of Criminal Procedure. *See* FED. R. CRIM. P. 26.2 (g)(limiting production of Jencks material prior to trial only for purposes of a detention hearing, a preliminary hearing, and a suppression hearing). Therefore, because the Defendant's request for Jencks material does not fall within the list of pretrial events outlined in FED. R. CRIM. P. 26.2(g) for which Jencks material must be produced, the Defendant's Motion for Early Disclosure of Jencks Material

---

[3]The Court notes that the Defendant's counsel had available to him a transcript of the state preliminary hearing testimony at the suppression hearing and utilized this transcript in conducting cross-examination. *See* HT, p. 27.

is denied.

### III. MOTION TO INSPECT JURY SELECTION MATERIALS

The Defendant's counsel moves for permission to inspect jury selection materials in compliance with Local Criminal Rule of Court 24.1 by agreeing to complete the certification required of him from that rule. The Government does not object to this request "to the extent that such inspection is already permitted under W.D.Pa. LCR 24.1" Government's Response, p. 20. Therefore, the defense counsel's motion is granted and such materials as are outlined pursuant to Local Criminal Rule 24.1 shall be provided to the Defendant's counsel after his compliance with the requirements of that rule.

### IV. MOTION TO PERMIT COUNSEL TO SUBMIT QUESTIONS ON VOIR DIRE OF PROSPECTIVE JURORS

The Defendant's counsel has moved for permission to submit questions on voir dire to prospective jurors pursuant to Local Criminal Rule 24.2. Defendant's Brief, p. 1. The Government does not generally oppose such a request as such decision is within the discretion of this Court, but specifically opposes this Defendant's request as no specific questions were submitted to the Court so as to facilitate a decision on this motion. Government's Response, p. 20.

The Court's standard criminal pretrial order permits the parties to submit voir dire questions to the Court ten days before the start of the trial that, if permitted by the Court, would be used to supplement the standard voir dire questioning conducted of prospective jurors. Therefore, the Court will reserve ruling upon the Defendant's motion until after the Defendant has submitted to the Court specific questions requested to be utilized in the voir dire of prospective jurors in this case.

## V. MOTION TO PERMIT COUNSEL TO CONDUCT VOIR DIRE OF PROSPECTIVE JURORS

Pursuant to Federal Rule of Criminal Procedure 24, the Defendant's counsel moves the Court for permission to conduct voir dire of prospective jurors in this matter in order to craft questions that are responsive to answers that may be given in order to determine the presence of any possible bias and to ensure that the Defendant's challenges for cause and peremptory challenges are exercised "in a rational fashion." Defendant's Brief, p. 2. The Government opposes such request in order to curb any abuse of the voir dire process that may occur. Government's Response, p. 19.

It is the Court's practice under Rule 24 to conduct the voir dire itself rather than permit either of the attorneys to examine any of the prospective jurors. The Court will continue this practice in the case *sub judice*. The Defendant's Motion to Permit Counsel to Conduct Voir Dire of Proposed Jurors is denied.

**AND NOW**, this 22nd day of November, 2005, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT:

1) the Defendant's Motion to Suppress (Document No. 15) is DENIED;

2) the Defendant's Motion for Early Disclosure of Jencks Materials (Document No. 17) is DENIED;

3) the Defendant's Motion to Inspect Jury Selection Materials (Document No. 19) is GRANTED;

4) the Defendant's Motion to Permit Counsel to Conduct Voir Dire of Prospective Jurors (Document No. 23) is DENIED; and

5) the Court reserves ruling upon the Defendant's Motion to Permit Counsel to Submit Questions on Voir Dire of Prospective Jurors (Document No. 21) until specific proposed questions are submitted for the Court's review.

BY THE COURT:

*[signature]*

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

cc: Jerome J. Kaharick, Esq.
Don A. Gerred, SAUSA